MILTON LOWENSTEIN, APPELLANT, v. JOHN N. LOHMAN, RESPONDENT.

Submitted January 29, 1932—Decided May 31, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the appellant, *Saul & Joseph E. Cohn.*

For the respondent, *Osborne, Cornish & Scheck.*

The opinion of the court was delivered by

PARKER, J. We are unable to perceive any error in the case as laid before us.

The original defendants were John N. Lohman and Pierre Lohman. The complaint—probably intended as in the alternative though it does not so state—is in two counts. The substance of the first count is that defendant John was a customer of H. G. Einstein & Company, stock brokers, and through Pierre as his agent ordered Einstein & Company to purchase certain stocks for him, which they did, he refused to take it and they resold at a loss.

The second count is the same except that it is directed against Pierre and charges him as principal. Plaintiff is assignee (probably formal) of the Einstein claim.

Pierre Lohman defaulted in pleading and judgment interlocutory entered against him. There has been no ascertainment of the amount of damages, and hence no final judgment as against Pierre.

John filed his answer, and after some interlocutory matters not now material, trial was moved against him, and resulted

in a nonsuit, and in this appeal. The sole ground of appeal is:

"Because the trial court erred in directing a nonsuit in favor of the defendant John N. Lohman against the plaintiff in that—

"(a) The trial court held that the plaintiff had elected to hold the defendant Pierre Lohman, only; and

"(b) The trial court ruled that the interlocutory judgment against Pierre Lohman was an election on the part of the plaintiff not to hold the defendant John N. Lohman."

The case will be searched in vain for such rulings. The transcript of proceedings at the trial is very short, and is here reproduced in full, omitting title, date, &c.

"Before Honorable William A. Smith, J., and a jury.

"For plaintiff appear Saul & Joseph E. Cohn (by Irwin R. Heller).

"For defendant appear Osborne, Cornish & Scheck (by Emanuel P. Scheck).

"Mr. Heller opens for plaintiff.

"Mr. Scheck: 'I shall ask for a nonsuit on the opening.'

"The Court: 'Motion granted.'

"Plaintiff's counsel prays an exception to this ruling of the court.

"Exception noted as ground of appeal."

If the trial court is to be reversed for error in nonsuiting on the opening, it must appear what that opening was, and that it stated a case for the jury within the very liberal rules laid down in such cases as *Kelly* v. *Bergen County Gas Co.,* 74 *N. J. L.* 604, and *Carey* v. *Gray,* 98 *Id.* 217. There is nothing now before us to indicate that plaintiff's counsel stated any case whatever that could be called a case. There are statements in the briefs as to what took place, but unless the facts appear in the record of transcript or by certificate of the trial court, they are not properly before a court of review.

The presumption on appeal is that no error was committed, and to work a reversal, error must be made manifest in the manner prescribed by the rules of procedure. It is true that statutes have gone a long way in easing the strictness of

the old practice: but with the exception of an agreed state of the case in District Court appeals, which, by the way, is almost never met with in practice, the fundamental rule remains unchanged that when error in a lower court is alleged for reversal, it must be manifested in some official manner contemplated by law. In *certiorari* to a lower court the certificate of that court is controlling as to what took place. *Gory* v. *Jackson,* 76 *N. J. L.* 387. Under the ancient practice on writ of error, only errors on the record would be considered. The practice of praying and sealing exceptions seems to have originated with the statute of Westminster 2d. 13 *Edw. I. C.* 31. This was carried into our statutes by the act of March 7th, 1797 (*Pat.* 245), which provided against the uncertainty of human memory by requiring that one alleging an exception shall "instantly" write it and ask that it be sealed. The objections to delay, and to informality, and to lack of proper certification, were stated in *Agnew* v. *Campbell* (1839), 17 *N. J. L.* 291. An exception when so sealed becomes part of the record. *Ibid.; Coxe* v. *Field,* 13 *Id.* 215, 218; *Associates* v. *Davison,* 29 *Id.* 417, 418: when presentation of exceptions for sealing is unduly delayed, the trial court may in its discretion refuse to seal them. *State* v. *Holmes,* 36 *Id.* 62. Forms of bills of exceptions will be found in *Archbold's Forms,* 122, and *Tidd's Forms,* 327 *et seq.* Prior to stenographic reporting, the importance of having exceptions promptly written out and sealed was obvious; and in District Court practice at the present day, in cases where no stenographer is appointed, the state of the case certified by the trial judge or agreed upon in writing by the attorneys, must be agreed or settled by a short day unless the judge allows further time. *Comp. Stat., p.* 2016, *pl.* 213b; *Id., p.* 2017, *pl.* 213c. As late as 1905 this court had before it an old-fashioned bill of exceptions (*Bostwick* v. *Willett,* 72 *N. J. L.* 21); and in that case recent minor changes in the practice were noted. But until the Practice act of 1912 the invariable rule for civil cases in the courts of common law was to ignore exceptions not sealed by the trial judge. In criminal cases, section 136 of the Criminal Procedure act, first enacted in

1894 (*Pamph. L., p.* 246), permitted a review without a bill of exceptions: but the courts of review have refused to consider anything but a ruling in some form by the trial court, and have insisted that the "entire record of the proceedings had upon the trial" as containing such rulings, be authenticated by the certificate of the trial court. *State* v. *Clark,* 75 *N. J. L.* 473. In *Ryan* v. *State,* 60 *Id.* 552, 554, the written stipulation of attorneys was held insufficient for review. The Practice act of 1912 abolished bills of exceptions in civil cases. *Pamph. L.* 1912, *p.* 382, § 25; but it did not abolish the necessity of excepting, or noting the exception on the stenographic transcript at the time: or of presenting that transcript to the appellate court as evidence of what the ruling was, and that it was properly excepted to. *Kargman* v. *Carlo,* 85 *N. J. L.* 632, 636. Moreover the stenographic transcript must give way to the certificate of the trial court as to what happened where the two are in conflict. *Ryan* v. *State,* 60 *Id.* 33; *Connolly* v. *Public Service Railway Co.,* 94 *Id.* 160; *Klemmt* v. *Yeskel,* 102 *Id.* 421; *State* v. *Merra,* 103 *Id.* 362. In the Ryan case there was a reversal in the Court of Errors and Appeals (60 *Id.* 552), but that court recognized the rule, differing in the construction put on the certificate.

It should appear plain from an examination of the foregoing authorities, that if a judgment is to be reversed on appeal for trial error, such error must be manifested and proved at common law by a bill of exceptions duly sealed: and where the common law has been changed by statute, the appellate court will not go beyond the statute to reverse a judgment for matters alleged to have occurred at the trial but not so certified by the trial court (or appearing in a stenographic transcript in civil cases) but merely asserted in the briefs of counsel, by whom the right of the trial court to a presumption of legal conduct of the case and to an affirmance unless the contrary properly appears, cannot be stipulated away.

Our reports of cases involving a nonsuit on the opening indicate that in each case the opening sufficiently appeared on the record, where review was had on the merits.

In *Kelly* v. *Gas Co.*, 74 *N. J. L.* 604, 605, the court observed:

"The opening appearing in the bill of exceptions is somewhat meagre, and if objected to on that ground, counsel would, no doubt, have been permitted to make his statement more complete. But I think it does present a case for the jury if the facts stated therein were proved. It appears thereby" (&c., stating the facts outlined by counsel).

In *D'Aloia* v. *Unione, &c.*, 84 *N. J. L.* 683, the opening had evidently been taken down and transcribed.

The same may be said of *Davenport* v. *Holden*, 95 *N. J. L.* 197, 199, where it is said that "counsel for the plaintiff opened his case, outlining fully what it was proposed to prove;" and the ground of the motion to nonsuit was stated and properly shown to the court of review.

In *Carey* v. *Gray*, 98 *N. J. L.* 217, the case shows a full report of an extended colloquy between court and counsel.

In Miller *v.* Stieglitz, just decided by the Court of Errors and Appeals, 109 *N. J. L.* 138, the court remarks: "It is intimated in the brief of the plaintiff that the defendants' attorney made statements in his opening which justified the trial court in dismissing the counter-claim. This may well be, but the record does not contain the opening of the defendants' counsel, and this court therefore must decide the case on the record."

It is true that ordinarily the stenographer does not take down an opening; but defense counsel are presumed to know in general when a plaintiff's case is without merit, and it is good practice and common practice in such cases to request the opening to be taken down. If this be omitted, and a nonsuit be either granted or refused at that point, the losing counsel who expects to review the ruling may, and should, resort to the old plan of preparing at once a statement for authentication by the trial court containing what the former bill of exceptions would contain, for use on appeal.

No error being properly manifested to us, the judgment under review will be affirmed.